Bergdoll Trust.

Argued April 12, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*William K. Rhodes* and *Elmer C. Pfeiffer*, with them *Louis J. Bergson, Jr.,* for appellants.

*Edward Davis,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 25, 1946:

These appeals raise a question concerning the ownership of personal property consisting of "jewelry, furniture, linens, clothing, materials, dishes, cut-glass, china-

ware and wearing apparel." The property formerly belonged to settlor, mother of claimant, the appellee. Its present ownership depends upon the effect to be given to the written assignment by the mother to the appellee, considered in connection with two deeds of trust, a family settlement and certain releases.

On *September 30, 1938,* Emma C. Bergdoll is purported to have executed an irrevocable deed of trust of "all my property, real, personal and mixed, of whatsoever kind the same may be and wheresoever situate and in which I may in any way have an interest." She appointed two of her sons as trustees. Her beneficiaries were her children and grandchildren, the quality of whose shares need not be recited. Her daughter Elizabeth B. Hall's life estate in a portion was subject to a spendthrift trust. The share of a son, Grover, was conditioned upon his conveyance to settlor of a specified piece of real estate.

On *December 9, 1938,* Emma C. Bergdoll executed a bill of sale which recited that in consideration of ten dollars paid to her, she sold, bargained and transferred "to my daughter, Elizabeth B. Hall all my jewelry, furniture, linens, clothing, materials, dishes, cut glass, china ware and wearing apparel", subject to a life estate reserved to the vendor.

On *December 12, 1938,* Mrs. Bergdoll executed another irrevocable deed of trust which purported to convey the same property as in the September deed, but which differed in the interests transferred to the various named beneficiaries.

On *April 11, 1940,* Elizabeth B. Hall and others executed releases to Emma C. Bergdoll.

Thereafter, disputes arose among the members of Mrs. Bergdoll's family, who were the beneficiaries under the two deeds of trust. To settle these differences, on April 22, 1940, a family settlement agreement was entered into between Emma C. Bergdoll and her children. The settlement agreement purported to be *under the deed of*

*trust of December 12, 1938,* and one of its provisions was: "All of the parties hereto . . . acknowledge the Deed of Trust of December 12, 1938, to be valid and incontestable and hereby forego any and all right to institute suit to void said Deed of Trust for any reason whatsoever. . . ."

Subsequent to the family settlement agreement, settlor Mrs. Bergdoll became incompetent and a guardian was appointed to act on her behalf. Following this, but prior to Mrs. Bergdoll's death on December 4, 1944, the trustees *under the December, 1938 deed of trust and the family settlement agreement* petitioned for leave to sell the articles of personalty here involved. Upon Mrs. Hall's objection the trustees further petitioned for a declaratory judgment. No answer was filed to the petition for sale of personal property, but one was filed to the petition for declaratory judgment.

Upon a hearing, the court in its "adjudication" of July 9, 1945, ruled that after the date of the first deed of trust the settlor "did not possess personal property, which she could sell or give away" hence the subsequent bill of sale under which Mrs. Hall claims "did not transfer to Elizabeth B. Hall, any personal property." Leave was granted the trustees to sell the property, subject to approval of the court. The court later sustained the exceptions to its "adjudication" and reversed its decree. In its opinion of November 29, 1945, the court said: *"The error is in the failure of the Trial Judge to consider the difference between income producing personal property and personal effects which a mother would naturally desire her only daughter to have."* The court decided that the words "personal property" in the trust deed *"only contemplated property, real or personal, which was or could be made 'income producing' "*. (Italics supplied.) The claim of Mrs. Hall was sustained and the articles or "the proceeds derived from the sale thereof" were directed to be paid or delivered to claimant.

Nowhere in this proceeding does it appear with *what* property we are concerned. It was not inventoried by

the *trustees* nor was it itemized or described in detail by the *daughter*. The court below construed the *deed of September 30, 1938,* and decreed that the property in dispute was not included under its terms. However, the trustees named in the deed are not made parties, while the trustees in the later deed of *December, 1938* are made parties.

It is to be noted that the court below regarded the deed of trust dated September 30, 1938, as a valid transfer to the named trustees. There is no evidence in the record that such deed was in fact *delivered* or intended so to be. We observe that the copy offered in evidence has no witnesses thereon, nor does it appear that it has been acknowledged or recorded. Furthermore, there is no proof that the son Grover made the transfer of the real estate conditioned on his obtaining his named share. It is also to be observed that Mrs. Hall's interest is a life estate in a portion and is protected by a *spendthrift trust.*

While a family settlement is favored in the law, yet *all interested parties* must join therein. Curiously enough, the son Louis John Bergson, Sr., appears not to have been joined as a party in interest, while his sons, Louis J. Bergson, Jr., and Wilbur C. Bergson, are parties. There is nothing on the record to reveal how the interest of the son Louis was divested, if it was, or if he had died in the meantime, how his share devolved upon his two sons.

If the deed of September, 1938, is valid, it is not disclosed how the later deed of trust of December, 1938 (of the same property), together with the family settlement (not joined in by all the parties) can revoke and set aside the September, 1938 deed, especially since there is a spendthrift clause concerning the daughter's life estate, or how the parties can thus enlarge such a life estate into a fee.

We note that the instant question of title arose under a petition to sell personal property. A petition for a

444

declaratory judgment was filed at or about the same time, to which an answer was filed and issue joined. No answer was filed to the petition to sell. The present decree was upon the petition to sell, based on the issue raised in the declaratory judgment proceedings, wherein the petition was dismissed.

As title to both personal and real property, of large value, may depend upon the decision of the title to this personal property of relatively inconsequential value, we must decline to pass upon any question as to the construction of the language of the deed of September, 1938, or any other question herein assigned for error, until all of the facts and circumstances are fully established and developed and the legal principles decided by the learned court below.

We therefore remit this record for such further proceedings, orders and decrees as the court below may deem proper and appropriate. Costs to abide the event. .